# TEXAS AND PACIFIC RAILWAY COMPANY *v.* INTERSTATE TRANSPORTATION COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 95. Argued December 3, 1894. — Decided January 7, 1895.

When a bridge is lawfully built over a navigable river within the limits of a State, and is maintained as a lawful structure, its owners may at all times have recourse to the courts to protect it; and any relief which may be granted by the court on such application is not a regulation of commerce.

When a court of equity is satisfied that irreparable injuries may be occasioned to such a structure by careless or wanton action on the part of navigators, the ordinary rule that the court will not act where there

is a dispute about the title or the extent of the legal rights of the parties does not apply, but it may grant relief by injunction before a trial at law. In this case, as the exigency created by the existence of an unusual flood, which was made the principal foundation for the bill, has long since passed away, and as the decree below dismissing the bill reserved the right of the complainant to bring an action for the recovery of its damages, the decree below is amended so that it shall be without prejudice generally, and is otherwise affirmed.

THE Texas and Pacific Railway Company was organized under an act of Congress, approved March 3, 1871, and several supplementary acts. In 1881 it acquired the railroad and franchises of the New Orleans Pacific Railway Company, a corporation of the State of Louisiana. Its main line of railroad extends from New Orleans to El Paso, Texas, and, as part of it, has a bridge costing $300,000 across the Atchafalaya River, which river is wholly within the State of Louisiana. The bridge has a draw of about 253 feet in the span, making a channel on each side of the centre of the draw of about 126 feet. The bridge is a legal structure, and is essential to enable the railway company to perform its public duties.

The Interstate Transportation Company, a corporation of the State of Louisiana, owned and controlled certain steam towboats and barges on the lower Mississippi River and tributaries, and carried on, for hire, the business of towing said barges loaded with coal and other heavy cargoes.

On March 29, 1890, the railway company filed in the Circuit Court of the United States for the Eastern District of Louisiana its bill of complaint against the transportation company. The allegations of the bill substantially were that on February 19, 1890, when the waters of the Atchafalaya River were at an unusually high stage, which condition still continued, the towboat Lambert, owned and controlled by the defendant company, while undertaking to pass through the draw of said bridge, which draw had been duly opened for the passage of the steamer, struck with its tow of barges the bridge seat at the eastern end of the draw, inflicting considerable injuries on the bridge, and threatening its destruction; that said accident was caused by the attempt of the towboat to

carry through said draw upon the unusual flood waters of the river more barges than at one time could be safely and surely handled in such circumstances; that the railway company at once notified the defendant company of the accident and warned it of the danger of such conduct and the manifestly irreparable injury that would come from the same if the bridge should be in anywise disabled; that the officers and agents of the defendant company would make no effort to prevent a repetition of said conduct nor give any assurance that the said conduct and method, which were manifestly tortious and unlawful, would not be repeated; that within the previous week, while the flood waters of the river were still higher and the current still swifter and more dangerous, defendant's towboats had been passing or attempting to pass through said draw with six barges in one tow, threatening to strike and destroy said bridge, and this at a time when none of said towboats have power to control and guide any tow, exceeding two barges, with safety.

The bill further averred that at high water, like that which prevailed at the time of the filing of the bill, it was unlawful, dangerous, and unnecessary for the towboats of the defendant company to pass through the draw with more than two barges in tow; that while the draw is of ample width for all the navigation of the stream, yet that if the defendant company, for its own convenience and profit, undertakes to carry through more than said number of barges, the high water and currents will or may at any moment swing the long tows in a direction across the opening of the draw and tend to strike and destroy the bridge; that the injury thus inflicted could not be compensated by actions for damages at law, nor could the defendant company, owing to the inadequacy of capital, respond in damages for the great loss that would be occasioned by the destruction of the bridge and the consequent suspension of traffic on the line of the railroad; that said high water and violent currents and flood were continuing and might increase and will exist for a long time, and that the towboats of defendant have not the power to safely guide each more than two of said barges through the draw at a time.

The complainant, reserving its claims for pecuniary damages for injuries theretofore or thereafter done, prayed that an injunction might issue restraining and prohibiting the defendant, its officers, agents, and servants, from passing any towboat through the draw of the bridge, at high water, with more than two barges in tow of such towboat, and from in any way striking and injuring said bridge, and that a restraining order might be issued, and that such injunction might be made perpetual

On the same day that the bill was filed a temporary restraining order was issued. On April 26, 1890, the motion for a preliminary injunction was made and argued, and on May 13, 1890, the injunction was refused, and the restraining order was dissolved, Judge Pardee, the Circuit Judge, filing an opinion.

On June 2, 1890, the defendant company filed a general demurrer to the bill and, after argument, the demurrer was, on January 16, 1891, sustained, and the bill was dismissed without prejudice to complainant's right to institute any action it may have at law. An opinion was filed by Judge Billings, the District Judge.

From this decree an appeal was allowed to this court.

*Mr. John F. Dillon* for appellant. *Mr. William Wirt Howe* filed a brief for same.

*Mr. George A. King* for appellee. *Mr. Charles W. Hornor* and *Mr. Guy M. Hornor* were on his brief.

Mr. Justice Shiras, after stating the case, delivered the opinion of the court.

In this case the only limitations on the exercise of the power granted to the railway to construct and maintain its bridge, pointed to, are that "the said company shall preserve any water course which its said railway may pass upon, along, or intersect, touch, or cross, so as not to impair its usefulness to the public unnecessarily, . . . and the said company shall not be required to construct a draw in any bridge

over and across any stream or bayou, except streams navigable by enrolled and licensed vessels, and when required by law." And as it appears that the company has constructed a draw of ample width in its bridge over the Atchafalaya River, and as it is not alleged or shown that the bridge as constructed has impaired the usefulness of the river to the public unnecessarily, it follows that the structure must be deemed a lawful one.

The defendant company having elected to stand upon a general demurrer, we must treat the bill as establishing the fact that the bridge, as constructed and maintained, is a lawful structure, and that the same does not impair unnecessarily the usefulness of the river to the public.

We cannot agree with the proposition of the court below and pressed on us here in the argument of the appellees, that the relief asked for is in the nature of a regulation of commerce, such as could only be prescribed by Congress.

If built and maintained as a lawful structure, of importance to the public, the company owning it can at all times have recourse to the courts to protect the same. If injuries have been negligently or wantonly inflicted upon the bridge, an action at law can be maintained against the wrongdoers for the damages suffered; and if such injuries are threatened, and a court of equity can be satisfied that irreparable injuries may be occasioned by careless or wanton action on the part of navigators, a remedy by injunction can surely be had. Nor do we think that, in a case like that presented in the bill, a court of equity would be constrained to refuse relief by injunction till there had been a trial at law. The ordinary rule that courts of equity will not act where there is a dispute about the title or the extent of the legal rights of the parties, until there has been a trial at law, does not apply to a case like the present one.

Nevertheless we do not feel constrained, upon the facts that appear in this case, to reverse the decree below and send the case back for further proceedings on answer and evidence.

Nearly four years have elapsed since the filing of the bill, and the exigency created by the existence of an unusual flood, which was made the principal foundation of the bill, has long

since passed away. To now entertain the bill would be to deal with a state of affairs no longer existing, and which possibly may never recur. The decree dismissing the bill reserved the rights of the complainant to bring an action for the recovery of its damages. The bill does not in terms allege that the defendant company, in towing six barges at once, was doing anything unusual, or out of the course of reasonable navigation. Nor does there appear to have been but a single instance of collision with the bridge in the long period during which it has existed, and in that instance it does not appear, by any allegation in the bill, that the towboat was guiding as many as six barges.

It is argued, however, on behalf of the appellants, that the course of the defendants, in demurring generally to the bill, and of the court in sustaining the demurrer and dismissing the bill, will, as a matter of precedent, leave them in a remediless position; that the decree of the court, particularly when the grounds upon which it was based are considered, would seem to wholly shut the gates of a court of equity against them, no matter how great an exigency might arise.

There is force in this view, and we think the decree dismissing the bill should be without prejudice generally, and not be restricted to saving the complainant's right to bring an action at law only.

Although we think that the appellants are entitled to such an amendment of the decree, yet, as they do not seem to have made any motion to that effect in the court below, when it may be presumed that court would have readily conceded such amendment, and as they have not confined their contention here to that matter, we shall not relieve them from the costs of this appeal.

The decree of the court below dismissing the bill is directed to be amended so that the same shall be without prejudice generally, and is otherwise *Affirmed.*